IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PIERRE JAMES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 10-cv-78-DRH |
| | ) |
| MICHAEL P. RANDLE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**HERNDON, Chief Judge:**

Plaintiff, an inmate at the Menard Correctional Center (Menard), brings this action for deprivations of his constitutional rights. Plaintiff commenced this action as one seeking a motion for a temporary restraining order and/or a preliminary injunction (Doc. 1). Plaintiff did not file a civil complaint with his motion. And, to date, no civil complaint has been filed. Accordingly, the Court also liberally construes the motion as a complaint seeking injunctive relief pursuant to 42 U.S.C. § 1983.[1] This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

---

[1]Accordingly, the Court will refer to Plaintiff's motion for a temporary restraining order (Doc. 1) as the complaint in this action.

>   (2) seeks monetary relief from a defendant who is immune from such
>   relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 590 U.S. 544, 570 (2007). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 821 (7th Cir. 2009).

**THE COMPLAINT**

Plaintiff states that he was transferred to Menard in November 2007. Plaintiff further states that since being transferred to Menard he has filed numerous grievances "concerning prison conditions, Menard House Rules & Policies, and unethical and unprofessional behavior of prison officials." Affidavit in Support, ¶¶1 and 2. Plaintiff asserts that as a result of filing and winning grievances, he was retaliated against by prison officials. Specifically, Plaintiff asserts that the retaliation included being placed in a "high aggression" cell block which had more restraints and restrictions than lower aggression cell blocks for which Plaintiff claims he was eligible; frequent

shake downs of his cell; and the issuance of disciplinary reports against him. Additionally, Plaintiff asserts that prison officials began strictly enforcing the rules against a rival gang. The rival gang was told that the strict enforcement was due to Plaintiff's frequent grievances. The leaders of the rival gang approached the leaders of the gang to which Plaintiff belonged and stated that Plaintiff would be "hit" if something was not done about Plaintiff's frequent grievances and complaints. Plaintiff asserts that he was told by his gang leaders that they would support him, but Plaintiff indicated that he wished to back down. According to the complaint, Plaintiff's desire to back down was seen as cowardice by his gang and, therefore, Plaintiff was forced to renounce his gang membership. For Plaintiff, being without a gang affiliation meant that he was without protection inside prison. Therefore, Plaintiff requested placement on protective custody.

It appears that Plaintiff was placed on protective custody status while prison officials evaluated his need for such status. Plaintiff asserts that, after being transferred to protective custody, he was interviewed by Defendant Thomas, an internal affairs officer. It appears that Plaintiff told Defendant Thomas that the reason he needed protective custody was because Defendants Maue, Bennett, Prescott, and Coffee had targeted him for retaliation. That is, in Plaintiff's view, if corrections officers would stop harassing him and violating his rights, then Plaintiff would stop filing grievances and lawsuits and - accordingly - the rival gang would not be harassed and, therefore, Plaintiff would not be in danger. It further appears that Plaintiff was informed that his problems with the corrections officers was an insufficient reason to be placed on protective custody.

At this point, it appears that Plaintiff's mother called prison officials to inquire about Plaintiff's placement in protective custody and to complain about Defendants Hale, Bennett, Coffee,

3

Prescott, and Thomas. Motion pg 3; Affidavit in Support, ¶ 11. Plaintiff was subsequently interviewed about his request for protective custody by Defendant Heinrich. Again, however, Plaintiff was informed that his problems with corrections officers was insufficient to keep him on protective custody status. Plaintiff was informed, though, that he could remain on protective custody status if he gave Heinrich information about which inmates were moving drugs or possessed knifes. Plaintiff informed Heinrich he had enough problems with other inmates at Menard without becoming a "snitch."

Shortly after his mother's telephone call, Plaintiff states that his cell was shaken down by Defendant Bennet and Plaintiff was given a disciplinary report for having a cracked property box lid and having an extra blanket. Motion, pg. 3; Affidavit in Support, ¶ 13. It appears that this disciplinary report was heard by Defendant Parnell who, according to Plaintiff, refused to call any of Plaintiff's witnesses. Defendant Parnell found Plaintiff guilty of the violation. For punishment, Plaintiff was required to pay for the broken box, had his commissary privileges restricted for one month, and he was placed on C-grade for one month. Plaintiff, however, was not sent to the segregation unit - an action which Plaintiff asserts would have exposed him to inmates from general population and, it appears, gang members who wished to harm him.

During this time, it appears that Plaintiff appealed the decision to remove him from protective custody to the Administrative Review Board (ARB). Affidavit in Support, ¶ 13. When the ARB did not call Plaintiff for a hearing, Plaintiff called his mother. Plaintiff's mother than called Defendant Spiller who assured her that Plaintiff would be examined by the ARB. According to the complaint, Plaintiff's mother picked up another telephone (while on the phone with Spiller) and contacted Defendant Summer, a counselor at Menard. Plaintiff states that Summer lied to his

mother by telling her that Plaintiff had already been seen by the ARB. When Summers was told that Plaintiff was also on the line, Summers backtracked and said she might have been mistaken.

Shortly after this incident, Plaintiff's cell was again searched Defendant Bennet. Motion, pg. 3; Affidavit in Support, ¶ 15. This searched revealed contraband (onion and garlic powder). Affidavit in Support, ¶ 15. Plaintiff's cell mate told Defendant Bennett and Defendant Prescott that the contraband belonged to the cell mate and that Plaintiff had nothing to do with it. *Id.* At this point, the allegations in Plaintiff's Complaint/motion and the allegations in his Affidavit diverge. According to the Complaint, Defendant Bennett planted additional contraband on Plaintiff's bunk. Motion, pg. 3. Plaintiff's Affidavit, however, does not mention the additional contraband. Instead, the Affidavit states that Defendant simply informed Plaintiff that both he and his cell mate were being taken to segregation and began to handcuff Plaintiff for movement. *Id.* Plaintiff asserts that while he was being handcuffed, Defendant Coffee "slammed [him] into the wall dislocating [Plaintiff's] shoulder." Motion, pg. 4; Affidavit in Support, ¶ 15. Plaintiff states that he was taken to segregation where he "requested medical treatment, but was denied." Affidavit in Support, ¶ 16. Plaintiff further alleges that:

> I then asked the Lt. What do I have to do to see a doctor. He laughed [and] said go on suicide watch you'll see a doctor then. I said okay I want to go on suicide watch. When I got to the doctor, there was only a nurse there who refused to deal with any medical problem she said I was there for mental health and if I have any physical problems I should put in a request slip.

Affidavit in Support, ¶ 16. Plaintiff asserts that he was "placed in a freezing cell . . . completely nude [and] viewed by several female [corrections officers]." *Id*. Plaintiff states the he "filed an emergency grievance with the Warden, Director, Betsy Spiller, Sandra Funk, [and] Terry Anderson, as well [as] the Governor of Illinois."

5

For relief, Plaintiff seeks a temporary restraining order or preliminary injunction "directing the defendants to treat [him] for his dislocated shoulder, transfer[ring] Plaintiff [to the Protective Custody at Pontiac Correctional Center and] giv[ing] Plaintiff a polygraph concerning the contraband [that] was planted in his cell."

## DISCUSSION

.       As evident from the foregoing, Plaintiff's complaint contains many fact allegations.  The nature of the relief Plaintiff seeks, however, makes many of his fact allegations irrelevant.  For example, the complaint asserts several instances of past misconduct by certain prison guards.  Such allegations may support a claim for damages against those guards for their past actions.  However, Plaintiff does not seek damages for past misconduct, he seeks only prospective injunctive relief.  Prospective injunctive relief addresses current or impending actions, not past misconduct.  Even liberally construed, it is difficult to determine which named defendants are currently alleged to be violating Plaintiff's constitutional rights.

Furthermore, to be effective, prospective relief must be directed to persons capable of complying with the Court's instructions.  For example, it does Plaintiff no good for this Court to direct prison guards "to treat Plaintiff for his dislocated shoulder," because prison guards are not qualified to give medical treatment.  Most, if not all, of the defendants named in this action - being lower level prison staff - are unable to provide Plaintiff with the specific relief he requests (medical treatment or transfer).  Even high ranking prison officials,  such as the Director of the Illinois Department of Corrections and the Warden, are entitled to relegate to the prison medical staff the provision of medical care to prisoners.  *Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009).  In this regard, Plaintiff has named only "unknown medical" staff, but it is not clear how this Court

can direct defendants unknown to it (or to Plaintiff) to provide Plaintiff with medical care.

Additionally, as a procedural matter, while Plaintiff has named numerous defendants in this action, his attached affidavit indicates that he only "filed an emergency grievance with the Warden, Director, Betsy Spiller, Sandra Funk, and Terry Anderson as well as the Governor of Illinois . . . informing them all of my plan to file this TRO and preliminary injunction." Thus, Plaintiff has not notified (or attempted to notify) every party against whom Plaintiff appears to seek a TRO. And, in fact, has notified a person (the Governor of Illinois) who is not even named as a party to this action. A TRO may issue without notice

> only if (1) it clearly appears from the specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

FED.R.CIV.P. 65(b). Plaintiff's allegations do not set forth specific facts demonstrating the likelihood of immediate and irreparable harm *before Defendants - all of them - can be heard*.

Turning to the merits, ex parte temporary restraining orders should be restricted to serving their purpose of preserving the *status quo* and preventing irreparable harm. *American Can Co. v.. Mansukhani*, 742 F.2d 314, 321-22 (th Cir. 1984). In this case, Plaintiff is *not* seeking to preserve the *status quo.* Instead, Plaintiff is seeking to drastically alter both his place of confinement and the conditions under which he is confined. Moreover, federal courts must exercise equitable restraint when asked to take over the administration of a prison, something that is best left to correctional officials and their staff. The Court notes that Illinois prison regulations provide a mechanism whereby prisoners can request medical treatment from medical staff. A dislocated shoulder can be painful, but it is not a life threatening injury and frequently can be repositioned with the aid of a

doctor. A mere delay in treatment, without any indication that the delay (rather than the original injury) made the condition worse is not actionable under the Eighth Amendment. *See Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007) (Eighth amendment action will not lie unless delay - rather than underlying condition - caused some degree of harm). In short, Plaintiff appears to have an adequate remedy for pursuing his medical claim.

With regard to his request for an order directing his transfer to Pontiac Correctional Center, Plaintiff has no constitutional right to be confined in or transferred to a particular prison. *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (prisoners possess neither liberty nor property in their classifications and prison assignments). *See also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the Constitution does not guarantee placement in a particular prison).[2] Thus, Plaintiff is unlikely to succeed on the merits of his claim.

Plaintiff is also appears unlikely to succeed on the merits of his claim for a polygraph exam. When, as here, a prisoner plaintiff challenges a disciplinary action on due process grounds, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). An inmate has a due process liberty interest only if the conditions of his or her confinement impose "atypical and significant hardship...in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Seventh Circuit Court of Appeals has adopted an extremely stringent

---

[2]The caveat to this rule – involving transfer or assignment to a prison where the conditions impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" – does not apply here, where the transfer decision does not involve Tamms Correctional Center, the closed maximum security prison (i.e., supermax prison) in Illinois. *See Westefer v. Snyder*, Civil No. 00-162-GPM (S.D. Ill. decided July 20, 2010), *citing Sandin v. Conner*, 515 U.S. 472 (1995).

interpretation of *Sandin*. In this Circuit, a prisoner in disciplinary segregation at a state prison has a liberty interest only if the conditions under which he or she is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). If the inmate is housed at the most restrictive prison in the state, he or she must show that disciplinary segregation there is substantially more restrictive than administrative segregation at that prison. *Id.* In the view of the Seventh Circuit Court of Appeals, after *Sandin* "the right to litigate disciplinary confinements has become vanishingly small." *Id.* Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Id.*

Nothing in the complaint or exhibits suggests that the conditions that he had to endure while in disciplinary segregation were substantially more restrictive than administrative segregation in the most secure prison in the State of Illinois. Indeed, Plaintiff's complaint is completely silent as to the discipline imposed on him for the contraband violation. Therefore, Plaintiff's due process claim - on which his request for a polygraph test rests - is without merit.

**DISPOSITION**

Plaintiff's motion for a TRO and/or preliminary injunction (Doc. 1) is **DENIED** without prejudice. Before dismissing this action, however, Plaintiff should be given an opportunity to amend it to address the deficiencies noted in this Memorandum and Order. Specifically, if Plaintiff still wishes to pursue this action, then Plaintiff is **ORDERED** to file a CIVIL COMPLAINT within thirty (30) days of the date of this Memorandum and Order. In his civil complaint, Plaintiff shall (1) identify each defendant against whom he seeks relief; (2) state the type of relief he seeks against

9

each defendant (damages, injunctive, or declaratory); (3) a brief statement of the facts supporting the requested relief against each defendant.

**IT IS FURTHER ORDERED** that if Plaintiff seeks injunctive relief (whether as part of his complaint or separately in a motion for a TRO or preliminary injunction), Plaintiff shall identify the irreparable injury he will incur if the injunction is not issued and Plaintiff shall identify the exact defendants and the exact actions he would like this Court to enjoin.

If Plaintiff fails to file a civil complaint as above-described in the time specified, then **IT IS HEREBY ORDERED** that this Court will **DISMISS** this action with prejudice pursuant to 28 U.S.C. § 1915A for failing to state a claim upon which relief may be granted and pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. Plaintiff is **ADVISED** that a dismissal under § 1915A will count as a "strike" under the provisions of 28 U.S.C. § 1915(g)

**IT IS SO ORDERED.**

**DATED:** August 19, 2010.

/s/     DavidRHerndon
**DISTRICT JUDGE**