IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **PIERRE JAMES, #R-14787,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) CIVIL NO. 10-cv-078-DRH |
| vs. | ) |
| | ) |
| **MICHAEL P. RANDLE, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

Plaintiff Pierre James, an inmate at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to **42 U.S.C. § 1983.** This case is now before the Court for a preliminary review of the complaint pursuant to **28 U.S.C. § 1915A**, which provides:

> (a) Screening.– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> 
> (b) Grounds for Dismissal.– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

>    (2) seeks monetary relief from a defendant who is
>
>    immune from such relief.

**28 U.S.C. § 1915A**.  An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." ***Neitzke v. Williams***, 490 U.S. 319, 325 (1989).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." ***Bell Atlantic Corp. v. Twombly***, 127 S. Ct. 1955, 1974 (2007).

**Facts:**
   After being transferred to Menard Correctional Center, Correctional Officers at Menard discovered that Plaintiff had a pending law suit filed against Stateville Correctional Center.  As a result, unnamed Correctional Officers began regularly shaking down Plaintiff's cell, as well as the cells of those in his unit.  Plaintiff was then approached by fellow inmates who told him that the Correctional Officers had informed them that the reason for the shakedowns was Plaintiff and his law suit, and that he should stop pursuing it.  While complaining to Defendant Lt. Thomas Defendant Howell had his weapon aimed at Plaintiff, causing Plaintiff to feel threatened.

   Plaintiff then spoke to Defendant Thomas in Internal Affairs regarding the behavior of the Correctional Officers.  Defendant Thomas found that the actions of the Correctional Officers were not in retaliation against Plaintiff, but simply part of the job.  Plaintiff then met with Defendant Summers, a counselor at Menard, and related the incidents up to this point to Summers, including the names of

Defendants Hale, Maue, Bennet, Prestwood, Monroe and Coffee as the chief harassing Correctional Officers.

Afterwards, Plaintiff was called before Defendants Spiller and Heinrich for an interview for removal to protective custody, which Plaintiff had requested as the result of various altercations with both inmates and staff. Based on the evidence presented, Plaintiff was denied protective custody.

Later on Plaintiff's cell was once again shaken down, resulting in another disciplinary ticket. Plaintiff met with Defendant Parnell regarding the ticket, but was denied the aid of witnesses in the hearing, as per Menard policy. Plaintiff then informed his mother of the issues that he had been facing, which resulted in Plaintiff's mother calling Menard to complain about the treatment.

Sometime after Plaintiff's mother called Menard to complain, Plaintiff's cell received a shakedown from Defendants Coffee, Prestwood, and Bennet, where contraband was discovered. Although Plaintiff's cellmate admitted that the contraband found belonged to him, Defendant Bennet wrote Plaintiff a disciplinary ticket, and had Defendant Dierks and Westerman sign the ticket.

As a result Plaintiff appeared before the Adjustment Committee, where Plaintiff was not allowed to present witnesses again as per Menard policy. As a result of the hearing Plaintiff received six (6) months of segregation, although Plaintiff requested placement in protective custody, which was denied. Plaintiff was then cuffed by Defendant Coffee and thrown against a wall, resulting in Plaintiff's shoulder becoming dislocated.

When Plaintiff was placed in segregation, he came under the custody of

Defendants Huer, Sulser, Foster, Chandler, and Drake.  There he was housed with a cellmate known to be aggressive.  Plaintiff was attacked three (3) times by his cellmate, and after complaining was told by the Correctional Officers that he needed to defend himself.  In February of 2010 Plaintiff went on a hunger strike when he was refused medical treatment by Defendants Fahin and Fuentes. Said strike was ignored by Defendants Monroe, Eiley, and Graphelous, causing the hunger strike to continue for eight (8) days.

Plaintiff again requested medical treatment, and was told that he would have to request placement on suicide watch, which Plaintiff did.  After being so placed Plaintiff was seen for a mental health evaluation by Defendant Greathouse, but was told by Defendants Goodnar, Misty, and Yang that he would need a new request to be seen for any physical issues.  Once being returned to his cell, Plaintiff informed Defendant Leifer that he was having suicidal thoughts and needed medical attention, but Defendant Leifer refused.   Plaintiff then cut his wrist, and was taken to the medical unit, where he was seen by Defendants Greathouse and Sourwine.  Plaintiff was then taken back to segregation.

During his tenure in segregation, Plaintiff filed numerous grievances concerning his need for medical care, which have been sent to Defendants Cowan, Randle, Gaetz, Funk, Fews, and Anderson.  To date the grievances sent to these defendants have not yet been answered.

Plaintiff requests a declaratory judgment acknowledging that his rights have been violated, an order for transfer to Dixon Correctional Center to receive medical treatment, or in the alternative a transfer to Pontiac Correctional Center

to be placed in segregation. Plaintiff further requests an injunction prohibiting Menard personnel from placing protective custody inmates with the general population, as well as compensatory damages in the mount of $50,000 against Defendants Randle, Fews, Funk, Anderson, Gaetz, Thomas, Spiller, Cowan, Heinrich, and Summers; $100,000 against Defendants Coffee, Bennet, Prestwood, Diercks, and Westerman; $25,000 from Defendants Lt.s Thomas, Howell, and Leifer, as well as Hale, Monroe, Sourwine, Greathouse, Graphelous, and Maue; $30,000 from Defendants Fahim, Fuentes, Yang, Misty, and Goodnar; $20,000 from Defendants Heur, Drake, Foster, Sulser, and Chandler; $10,000 from Defendant Parnell. Plaintiff further requests an award of punitive damages in the amount of $35,000 against each named Defendant.

**Discussion:**

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into six (6) counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1 Retaliation:**

Plaintiff claims that Defendants Bennett, Hale, Coffee, Monroe, Howell, Diercks, Foster, Eiley, Sulser, Drake, Huer, Prestwood, Maue, Graphelous, Westerman and Chandler acted against him in retaliation first for his pending law

suit against Stateville Correctional Center, and then for the various grievances he has filed against Menard staff.  Specifically, Plaintiff charges that Defendants Bennet, Hale, Coffee, Monroe, Prestwood, Howell, Dierks, and Westerman engaged in unnecessary shakedowns of Plaintiff's cell in retaliation.  Plaintiff further charges that Defendants Huer, Sulser, Foster, Chandler, and Drake retaliated against Plaintiff by housing him with a cellmate known to be aggressive.  Finally, Plaintiff contents that Defendants Eiley and Graphelous retaliated against Plaintiff by refusing to send Plaintiff to the medical ward.

To succeed on a retaliation claim, an inmate must demonstrate that prison officials retaliated against him for exercising a constitutionally protected right. **Morfin v. City of East Chicago**, 349 F.3d 989, 1005 (7th Cir. 2003). The plaintiff bares the burden of proving that retaliation for the plaintiff's complaints was a motivating factor in the defendant's decision to act in the manner claimed. **Pearson v. Welborn**, 471 F.3d 732, 740 (7th Cir. 2006).

Plaintiff claims that his constitutional rights to free speech and freedom from cruel and unusual punishment were infringed when the above named defendants retaliated against him in an attempt to silence his filing of grievances. A prisoner's grievances about prison conditions are protected where they are statements concerning matters of public concern in an attempt to change prison policy. **Walker v. Thompson**, 288 F.3d 1005, 1007-09 (7th Cir. 2002).  Plaintiff's grievances concerning the treatment of inmates in protective custody as well as the inability to present witnesses at administrative hearings constitutes an attempt

to change prison policy regarding these issues, and thus any actions taken against Plaintiff as a result of these grievances is indeed in violation of his rights.

The actions that Plaintiff claims were taken in retaliation, (namely the shakedowns performed, housing with an aggressive cellmate, and refusal to grant Plaintiff leave to attend the medical ward) are in fact actions that Correctional Officers perform everyday. However, a claim for retaliation will turn on whether the plaintiff can show that the events in question would have developed differently, if at all, absent the retaliatory motive. ***Mt. Healthy City School District v. Doyle***, 429 U.S. 274, 287 (1977). Plaintiff need not yet offer proof at this stage that the actions taken by the above named Defendants were motivated by retaliation, but must only state a claim alleging such conduct, which he has, and thus the claim of retaliation against Defendants Bennet, Hale, Coffee, Monroe, Howell, Diercks, Foster, Eiley, Sulser, Drake, Huer, Prestwood, Maue, Graphelous,, Chandler, and Westerman cannot be dismissed at this time.

**Count 2 Deliberate Indifference:**

Initially the Court will note that, Plaintiff claims that Defendants Cowan, Rankle, Gaetz, Funk, Fews, and Anderson showed deliberate indifference to his medical needs when, after filing grievances claiming need for medical attention, he received no response. Plaintiff further contends that Defendants Greathouse, Sourwine, Goodnar, Misty, Yang, Summers, Fuentes and Fahim showed deliberate indifference when they did not provide Plaintiff with the medical care he desired, specifically that he was treated for mental illness instead of physical

injuries.  Plaintiff finally claims that Defendant Leifer was deliberately indifferent to his medical needs when, instead of bringing Plaintiff to the medical ward after Plaintiff threatened to slit his wrist, Defendant Leifer allowed Plaintiff to remain in the suicide watch unit.

To state a claim for deliberate indifference to the need for medical care, a prisoner must "allege acts or omissions sufficiently harmful..." ***Estelle v. Gamble***, 429 U.S. 97, 106 (1976).  A medical condition is serious when "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." ***Gutierrez v. Peters***, 111 F.3d 1364, 1373 (7th Cir. 1997). Serious conditions, for example, include those that "significantly affect an individual's daily activities" or cause "chronic and substantial pain." Id. (quoting Estelle, 429 U.S. at 105-6, 97 S.Ct. 285).   However, mere dissatisfaction with a particular course of treatment, or even malpractice, does not amount to a claim for deliberate indifference, and a prisoner's self-serving opinion of the quality of treatment is insufficient to raise the claim.  *See* ***Snipes v. DeTella***, 95 F.3d 586, 592 (7th Cir.1996); ***Walker v. National Recovery, Inc***., 200 F.3d 500, 503 (7th Cir.1999); ***Estelle v. Gamble***, 429 U.S. 97, 107 (1976).  To parse these claims the Court will divide them in three groups.

### A. Indifference to Grievances

Plaintiff alleges that Defendants Cowan, Rankle, Gaetz, Funk, Fews, and Anderson's failure to respond to his grievances claiming need for medical attention amounts to deliberate indifference.  However, the prison grievance system is in place as an administrative remedy, and such remedies must be entirely exhausted before an inmate may proceed with the related claim in  court.

*See* **42 U.S.C. §§ 1997e(a)**; ***Pozp v. McCaughtery***, 286 F.3d 1022, 1023-24 (7th Cir. 2002); ***Booth v. Churner***, 532 U.S. 731 (2001). Exhaustion of administrative remedies, pursuant to the Prison Litigation Reform Act (PLRA), is required for all prisoner suits seeking redress for prison circumstances or occurrences, regardless of whether they involve general circumstances of incarceration or particular episodes, and whether they allege Eighth Amendment violation based on use of excessive force or some other wrong. ***Porter v. Nussle***, 534 U.S. 516 (2002); ***Neal v. Goord***, 267 F.3d 116, 117-118 (2d. Cir. 2001); ***Griffin v. Page***, 122 F.Supp.2d 930 (N.D.Ill.2000).

Because Plaintiff's grievances filed to Defendants Cowan, Rankle, Gaetz, Funk, Fews, and Anderson are still pending, Plaintiff has not yet exhausted his administrative remedies pursuant to the Prison Litigation Reform Act. As a result, the claim for deliberate indifference against Defendants Cowan, Rankle, Gaetz, Funk, Fews, and Anderson must be dismissed without prejudice.

**B. Indifference to Desired Care**

Plaintiff next claims that Defendants Greathouse, Sourwine, Goodnar, Misty, Yang, Summers, Fuentes and Fahim showed deliberate indifference to his medical needs when, instead of treating him for physical injuries for which he wished to be seen, he was treated for mental illness after being submitted to the suicide watch unit at his request. As stated above, an inmate's desire to receive one form of treatment over another does not amount to deliberate indifference. *See* ***Snipes v. DeTella***, 95 F.3d 586, 592 (7th Cir.1996); ***Walker v. National Recovery, Inc.***, 200 F.3d 500, 503 (7th Cir.1999); ***Estelle v. Gamble***, 429 U.S. 97, 107 (1976).

Plaintiff was seen for mental health issues after requesting placement in the suicide watch unit. Plaintiff was then seen for physical treatment after he cut his wrist in said unit. It seems that Defendants were responding to what they believed

to be Plaintiff's medical needs based on the circumstances. Plaintiff was informed that if he wished to be seen for another ailment, he was free to fill out a request, but at the present time he was to be treated for only for the health issues that caused him to be brought to the medical ward, and for nothing more. Because Defendants provided Plaintiff with medical attention, though he would have preferred different treatment, the claim for deliberate indifference to medical needs against Defendants Greathouse, Sourwine, Goodnar, Misty, Yang, Summers, Fuentes and Fahim must be dismissed with prejudice.

### C. Indifference to Threat

Plaintiff claims that Defendant Leifer's failure to bring Plaintiff to the medical ward after Plaintiff threatened to slit his wrist, and instead causing Plaintiff to remain in the suicide watch unit, amounted to deliberate indifference to Plaintiff's medical needs. It is true that a psychological disorder may constitute a serious medical need. **White v. Farrier**, 849 F.2d 322, 325 (8th Cir.1988). But placement of an inmate in the suicide watch unit and precautions to be taken are subjective issues that must be determined on a case by case basis. *See* **Estate of Cole v. Fromm**, 94 F.3d 254, 261 (7th Cir. 1996). In this instance, it seems plausible that Defendant Leifer believed that, after Plaintiff threatened suicide, the suicide watch unit was indeed the safest place for Plaintiff to be. Defendant Liefer did not take Plaintiff to the medical ward because Plaintiff did not have any physical injuries at that point. After Plaintiff cut himself, Defendant Liefer promptly took Plaintiff to get medical attention. Deliberate indifference will be inferred when a defendant's decision is "a substantial departure from accepted professional judgment." **Estate of Cole**, 94 F.3d at 261-62. There is no indication that Defendant Liefer's actions were a "substantial departure" from Menard policy. A defendant who refuses to act or who takes no precautions

against suicidal threats by an inmate may be guilty of deliberate indifference for ignoring a serious risk of harm, see **Manarite v. City of Springfield**, 957 F.2d 953, 957 (1st Cir. 1992); **Greason v. Kemp**, 891 F.2d 829, 839 (11th Cir. 1990). Because Defendant Liefer did take precautions against Plaintiff's threats by placing him in the suicide watch unit, and thus treated Plaintiff's psychological medical needs, and then took Plaintiff to the medical ward when the need arose for medical attention, the claim for deliberate indifference to medical needs against Defendant Liefer must be dismissed with prejudice.

**Count 3 Denial of Access to Courts:**

Plaintiff next claims that placement in segregation by Defendants Spiller and Heinrich denied him access to the library because inmates in the segregation unit were not given adequate library vising hours. Because the library is where legal materials are kept, Plaintiff asserts that this amounts to a limitation on his access to the courts. While inmates placed in the segregation unit may have more rights restricted than inmates in general population, such unequal treatment "is justified if it bears a rational relation to legitimate penal interest." **Hudson v. Palmer**, 468 U.S. 517, 522-23 (1984); **Williams v. Lane**, 851 F.2d 867, 881 (7th Cir. 1988).

Plaintiff was placed in segregation as a result of disciplinary tickets. There is no indication that Defendants Spiller and Heinrich placed Plaintiff in segregation in an attempt to restrict his access to the library, and thus legal material. Inmates in segregation are necessarily more restricted for their own safety, as well as the safety of other inmates. Because such unequal treatment of inmates is related to a legitimate penal interest, and because there is no evidence

that such a policy was put in place to restrict Plaintiff's access to court material, this claim against Defendants Spiller and Heinrich must be dismissed with prejudice.

**Count 4 Excessive Force**

Plaintiff claims that Defendant Coffee used excessive force when Defendant Coffee cuffed Plaintiff, then slammed Plaintiff into a wall, causing injury. The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. ***Hudson v. McMillian***, 503 U.S. 1, 6-7 (1992); ***DeWalt v. Carter***, 224 F.3d 607, 619 (7th Cir. 2000). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." ***Hudson***, 503 U.S. at 6-7. An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action. . . . [the] prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Id. at 9-10; see also ***Outlaw v. Newkirk***, 259 F.3d 833, 837-38 (7th Cir. 2001).

Plaintiff claims that Defendant Coffee slammed Plaintiff into the wall so

hard that it caused Plaintiff's shoulder to become separated. Whether the force that was used in this instance was de minimis or was an attempt to cause real harm is not yet capable of being determined. For this reason, the claim of use of excessive force against Defendant Coffee cannot be dismissed at this time.

### Count 5 Refusal to Protect

Plaintiff contends that after he complained to Defendant Lt. Thomas about other Correctional Officers' actions, Defendant Lt. Thomas's failure to act amounts to a refusal to protect. Plaintiff also claims that he complained to Defendant Thomas, a separate defendant from Defendant Lt. Thomas, about the behavior of the various Correctional Officers, and Defendant Thomas also did nothing to stop the behavior, which Plaintiff claims is also a refusal to protect.

A plaintiff does not need to show that a defendant failed to act believing that harm actually would occur; it is enough that the defendant failed to act knowing of a substantial risk of serious harm. **Farmer v. Brennan**, 511 U.S. 825, 842 (1994). However, plaintiffs must demonstrate that defendants are personally responsible for the harm caused, or that said harm was a result of the defendant's failure to act. **Monell v. Department of Social Serv's**, 436 U.S. 658, 694 (1978); **Gentry v. Duckworth**, 65 F.3d 555, 561 (7th Cir.1995).

Plaintiff claims that he informed both Defendants Thomas and Lt. Thomas of the harassment and retaliatory actions of the other Correctional Officers, and that both Defendants refused to act. Plaintiff's claim that the actions of the other

Correctional Officers are in retaliation for a different matter seems to indicate that the harassment would have continued even without Defendant Thomas and Lt. Thomas's failure to act on the information, and thus the failure to act cannot be considered the cause of the harassment. And while supervisors may be liable for the actions of their subordinates where the supervisor "knows of and facilitates, approves, condones, or turns a blind eye to the conduct," there is no indication that either of the above named Defendants is in a supervisory capacity. ***Chavez v. Cady***, 207 F.3d 901, 906 (7th Cir.2000); ***Jones v. City of Chicago***, 856 F.2d 985, 992-93 (7th Cir.1988). Defendant Lt. Thomas is a fellow Correctional Officer, and thus does not have supervisory authority over the other Officers. And while Defendant Thomas is the head of Internal Affairs at Menard, Plaintiff does not demonstrate that Defendant Thomas facilitated, approved, or condoned the actions of the Correctional Officers, or that Defendant Thomas is in a supervisory capacity overseeing the Correctional Officers. Because neither Defendant Lt. Thomas nor Defendant Thomas were responsible for the actions of the other Correctional Officers, they did not incur a duty to protect Plaintiff from such actions. As a result, the failure to protect claim against Defendants Thomas and Lt. Thomas must be dismissed with prejudice.

**Count 6 Due Process**

Plaintiff's final claim alleges that Defendant Lt. Parnell refused to allow Plaintiff to bring witnesses to Plaintiff's hearings regarding his disciplinary tickets, stating that it was Menard Correctional Center's policy that witnesses were not

allowed at these types of hearings. Plaintiff contends that this is a violation of his due process rights. This right was considered in the Wilkinson v. Austin case, where it was determined that a prison has a legitimate interest in controlling individual inmates as well as the prison in general, and that this interest is threatened by allowing inmates the opportunity to call witnesses to disciplinary hearings, making the potential value of the witness testimony small in comparison to the cost to security. **Wilkinson v. Austin**, 545 U.S. 209, 228 (2005). Where the inquiry draws more on the experience of prison administrators, and where the Prison's interest implicates the safety of other inmates and prison personnel, the informal, nonadversary procedures set forth in **Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex**, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668, and **Hewitt v. Helms**, 459, U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), provide the appropriate model. **Wilkinson v. Austin**, 545 U.S. 209, 229 (2005).

Plaintiff admits that it is Menard policy to deny requests for witnesses in disciplinary hearings, and that this is the reason Defendant Lt. Parnell denied Plaintiff's request. There is no indication that Defendant Lt. Parnell was acting outside of the scope of the policy created by the prison. Use of witness testimony at administrative hearings has been recognized as a serious threat to safety, **Wilkinson v. Austin**, 545 U.S. at 228, and Menard is justified in creating a policy limiting the use of witnesses or banning them completely. Because Defendant Lt. Parnell was following a justifiable policy created in the interest of safety, the claim

for violation of due process must be dismissed with prejudice.

**Pending Motions**:

Plaintiff has made a motion for appointment of counsel (Doc. 13). There is no absolute right to appointment of counsel in a civil case. ***Cook v. Bounds***, 518 F.2d 779 (4th Cir. 1975); ***Peterson v. Nadler***, 452 F.2d 754 (8th Cir. 1971). When presented with a request to appoint counsel, the Court must make the following inquiries: "(1) has the ...plaintiff made a reasonable attempt to obtain counsel or effectively been precluded from doing so and (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself." ***Pruitt v. Mote***, 503 F.3d 647, 654-55 (7th Cir. 2007). With regard to the first step of the inquiry, Plaintiff has stated that he has attempted to obtain counsel via letters sent. However, in making such statement he lists the names of three of lawyers and states that "most" of them have not responded to his letters. The Court does not find this to be a reasonable attempt to secure representation. In regard to the second step, neither the legal issues raised in the complaint nor the evidence that might support plaintiff's claims seem to be so complex or intricate at this juncture so that a trained attorney is absolutely necessary. Plaintiff appears more than capable of presenting his remaining claims. At least, it is too premature, at this time, to declare that Plaintiff is not sufficiently sophisticated to handle this case while relying on his own talents. It should be noted that the court grants pro se litigants wide latitude in the handling of their lawsuits. Therefore, plaintiff's motion for appointment of counsel will be **DENIED**, without prejudice to the

Plaintiff to re-file the motion if he feels he is unable to handle the case or to the Court to sua sponte raise the issue if it determines the Plaintiff needs the assistance.

**Disposition:**

   **IT IS HEREBY ORDERED** that  Counts 2,3,5, and 6 are frivilous, and thus Defendants ANDERSON, COWAN, FAHIM, FEWS, FUENTES, FUNK, GAETZ, GOODNAR, GREATHOUSE, HEINRICH, LEIFER, LT. PARNELL, LT. THOMAS, MISTY, RANKLE, SOURWINE, SPILLER, SUMMERS, THOMAS, and YANG are DISMISSED from this action with prejudice, with the exception of the exhaustion issue which is dismissed without prejudice.

   **IT IS FURTHER ORDERED** that the Clerk shall prepare for Defendants BENNETT, CHANDLER, COFFEE, DIERCKS, DRAKE, EILEY, FOSTER, GRAPHELOUS, HALE, HOWELL, HUER, MAUE, MONROE, PRESTWOOD, SULSER, and WESTERMAN  (1) a Notice of Lawsuit and Request for Waiver of Service of Summons; and (2) a Waiver of Service of Summons.  The Clerk is directed to mail said forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's work address or employer address as provided by Plaintiff.  If a Defendant fails to sign and return the Waiver to the Clerk within 30 days from the date said forms were sent, the Court will take appropriate steps to effect formal service on that Defendant and will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the address provided by Plaintiff, the Correctional Center shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above, or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every further pleading or other document submitted for consideration by the court. Plaintiff shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date on which a true and correct copy of any document was served on Defendants or their counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to **42 U.S.C. § 1997e(g).**

Pursuant to **Local Rule 72.1(a)(2)**, this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by **Local Rule 72.2(b)(2)** and

**28 U.S.C. § 636(c)**, should all the parties consent to such a referral.

Plaintiff is **ADVISED** of his continuing obligation to keep the Clerk [and each opposing party] informed of any change in his whereabouts during the pendency of this action.  This notification shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.  Failure to provide such notice may result in dismissal of this action.  See **Fed.R.Civ.P. 41(b)**.

**IT IS SO ORDERED**.

DATED:   December 23, 2010

*/s/ David R. Herndon*
David R. Herndon
2010.12.23 13:35:00
-06'00'

**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**